UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIDI T. LARA, | ) No. CV 15-5431 AS |
| Plaintiff, | ) |
| v. | ) |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) **MEMORANDUM OPINION AND** ) **ORDER OF REMAND** |
| Defendant. | ) |

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY ORDERED that this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

On July 17, 2015, Plaintiff filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the denial of her application for disability insurance benefits and supplemental security income (Docket Entry No. 1). On November 20, 2015,

Defendant filed an Answer to the Complaint and the Certified Administrative Record ("AR"), (Docket Entry Nos. 14-15). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 11-12). On February 5, 2016, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 16).

The Court has taken this matter under submission without oral argument. See C.D. Cal. L.R. 7-15; "Order Re: Procedures In Social Security Case," filed July 17, 2015 (Docket Entry No. 9).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On April 17, 2012, Plaintiff Didi T. Lara ("Plaintiff") applied for disability insurance benefits and supplemental security income, alleging a disabling condition beginning March 31, 2009. (AR 172, 176). On December 16, 2013, the Administrative Law Judge, Michael D. Radensky ("ALJ"), examined Plaintiff's medical records and heard testimony from Plaintiff and vocational expert ("V.E.") Sandra Fioretti (AR 23-64).

Plaintiff testified as follows: She last worked in March 2009 as a "health-care giver" but stopped because she was "going through a lot of pain." (AR 27). Although she had experienced shooting pain in her fingers and arms since 1997, she became unable to work when the pain became a constant "everyday thing." (AR 34-35). She never had a pain-free day, but her pain level fluctuated between seven or eight and twelve on a ten-point scale. (AR 35-36). She could lift

five pounds, stand for about two hours without stopping, and sit for about an hour without stopping. (AR 45-47). She "sometimes" tried to lift a dish or "get a gallon of milk or something that we need at Wal-Mart," but her pain made these tasks difficult. (AR 46, 48). She spent three or four hours lying down between 9:00 AM and 5:00 PM every day. (AR 49). In response to questioning by the ALJ, Plaintiff stated that she drives to appointments and to pick up and drop off her daughter every day (AR 50), she sometimes uses public transportation (id.), she does "most of the [cooking]" in her household, often something "easy" like pasta, she and her daughter do laundry together (AR 50-51), and she also grooms and cleans up after a toy poodle, goes to the library, and sometimes runs other errands. (AR 52-54).

The V.E. testified that jobs existed for an individual limited to light work with the following additional limitations: occasional postural activities; no climbing ladders, ropes, or scaffolds; limited on the dominant right upper extremity to frequent but not constant fine and gross manipulation; limited on the left upper extremity to occasional fine and gross manipulation; avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, and poor ventilation; and no unprotected heights or dangerous machinery. (AR 60-61). The V.E. noted, though, that there were no jobs for such an individual who would also be off task for twenty percent of the workday or who would require a ten or fifteen minute break every hour. (AR 61-62).

On January 9, 2014, the ALJ issued a decision denying

Plaintiff's application. (See AR 11-18). The ALJ applied the five-step process in evaluating Plaintiff's case. (AR 12-13). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the alleged onset date. (AR 13). At step two, the ALJ found that Plaintiff had severe impairments including reflex sympathetic dystrophy left upper extremity, obesity, and degenerative disc disease of the cervical spine. (AR 13). At step three, the ALJ concluded that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 14).

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")[1] to perform light work[2] with the following limitations: "occasional postural activities (i.e. climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling), except she cannot climb ladders, ropes, or scaffolds; her dominant right upper extremity is limited to frequent but not constant fine and gross manipulation; her left upper extremity is limited to occasional fine and/or gross manipulation; she is to avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, and gases; she cannot be in an environment with poor ventilation; she cannot work on unprotected heights or on dangerous machinery." (AR 14). In making this finding, the ALJ

---

[1] Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[2] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." See 20 C.F.R. §§ 404.1567(b).

4

found that Plaintiff's testimony regarding her activities of daily living "diminish[ed] the credibility of [Plaintiff]'s allegations of functional limitations" and that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not entirely credible. (AR 15, 17). At step four, the ALJ determined that Plaintiff could return to her past work as a retail store manager (AR 17), and therefore found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 18).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1-4). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if the decision is free of legal error and supported by substantial evidence. See Brewes v. Commissioner of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a court] may not

substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ erred in failing to properly consider her testimony and make proper credibility findings. (Joint Stip. at 2, 5-6).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that Plaintiff's claim warrants a remand for further consideration.

**A. The ALJ Failed to Properly Assess Plaintiff's Credibility**

A claimant initially must produce objective medical evidence establishing a medical impairment reasonably likely to be the cause of the subjective symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). Once a claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged, and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his pain and symptoms only by articulating specific, clear and convincing reasons for doing so. Brown-Hunter v. Colvin, 798 F.3d 749, 755 (9th Cir. 2015) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)); see also Smolen, 80 F.3d at 1281;

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Because the ALJ does not cite to any evidence in the record of malingering, the "clear and convincing" standard applies.

As set forth below, the ALJ failed to provide clear and convincing reasons for finding that Plaintiff's testimony about the intensity, persistence and limiting effects of her symptoms was not fully credible.

The ALJ analyzed Plaintiff's testimony as follows:

> [Plaintiff] testified she could [perform] a variety of activities of daily living (sometimes with the help of her daughter), such as drive, sometimes use public transportation, cook, do laundry, clean up after a small dog, and do errands. [Plaintiff] self-assesses that she could sit for 40 minutes to an . . . hour at a time. She could stand for more than 2 hours at a time.
>
> [Plaintiff] has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. The [ALJ] finds [Plaintiff]'s ability to

>participate in such activities diminishes the credibility of [Plaintiff]'s allegations of functional limitations.
>
>After careful consideration of the evidence, the [ALJ] finds that [Plaintiff]'s medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(AR 15-16).

The ALJ failed to "specifically identify 'what testimony is not credible and what evidence undermines [Plaintiff's] complaints.'" Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)); see also Smolen v. Chater, supra, 80 F.3d at 1284 ("The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion").

The ALJ's discounting of Plaintiff's testimony based on Plaintiff's abilities to perform certain daily activities, such as "drive, sometimes use public transportation, cook, do laundry, clean up after a small dog, and do errands," was not a clear and convincing reason. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her

credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled."); Reddick v. Chater, supra ("Only if the level of activity were inconsistent with the Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). The ALJ also overstates the degree to which the activities described in Plaintiff's testimony are consistent with activities necessary to secure and maintain employment. It is not clear from the record, and the ALJ did not attempt to ascertain, the specifics, and/or extent, of Plaintiff's abilities to do such daily activities. Therefore, the degree to which Plaintiff could perform such daily activities may not have been inconsistent with her claims of frequent disabling pain that prevents her from working. See Reddick v. Chater, supra; see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."). Here, the ALJ failed to meaningfully address Plaintiff's claim that she spends three or four hours lying down every day (AR 49-50), or Plaintiff's testimony that she "give[s] up many times" when attempting to run errands or perform other activities and her pain sometimes waxes and wanes while she attempts to undertake errands. (AR 48).

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise,

9

does not in any way detract from her credibility as to her overall disability. See Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (finding "only a scintilla" of evidence supporting ALJ's adverse credibility finding where claimant was able to go grocery shopping with assistance, walk approximately an hour in the mall, get together with friends, play cards, swim, watch television, read, undergo physical therapy, and exercise at home); see also Reddick, supra, 157 F.3d at 722 (activities of daily living affect a claimant's credibility "[o]nly if the level of activity [is] inconsistent with the [c]laimant's claimed limitations"; ALJ erred by "not fully accounting for the context of materials or all parts of the testimony and reports," resulting in paraphrasing of record material that was "not entirely accurate regarding the content or tone of the record").

Defendant argues that the ALJ's adverse credibility determination was also proper based upon: (1) the lack of objective medical evidence supporting Plaintiff's claimed limitations; (2) the existence of medical evidence affirmatively contradicting Plaintiff's claimed limitations; and (3) Plaintiff's relatively conservative treatment regimen. (Joint Stip. at 13). However, the Court cannot affirm the ALJ's decision on grounds which the ALJ did not rely. As the Ninth Circuit recently stated in Burrell v. Colvin, 775 F.3d 1133 (9th Cir. 2014):

> The government argues that Claimant's testimony that she has, on average, one or two headaches a week conflicts with the medical record. As an initial matter, the ALJ never

>connected the medical record to Claimant's testimony about her headaches. Although the ALJ made findings [. . .] concerning Claimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings. For that reason alone, we reject the government's argument that the history of treatment for headaches is a specific, clear, and convincing reason to support the credibility finding.

See id. at 1138-39; see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss. Because the ALJ did not assert specific facts or reasons to reject Connett's testimony . . . we must reverse the district court on this issue").

Here, the ALJ summarized the medical evidence, noting that Plaintiff generally received conservative treatment and that some doctors, particularly state agency physicians and a consultative examiner, reported that Plaintiff was able to perform light work. (AR 16-17). The ALJ then concluded:

>In sum, the above residual functional capacity assessment is supported by the evidence as a whole. [Plaintiff]'s subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of the symptoms. [Plaintiff]'s limitations would not preclude the performance of substantial gainful

11

    activity. The [ALJ] notes [Plaintiff] takes copious heavy pain medications, which may be exacerbating her condition, but her main condition appears to be focused on the left upper extremity. But there is little evidence of any other significant problems. For all the foregoing reasons, [t]he [ALJ] finds [Plaintiff] was not under a disability. . . ."

(AR 17).

Although the ALJ found that Plaintiff's daily activities diminished her credibility, the ALJ did not tie his summary of the medical evidence to an analysis of Plaintiff's credibility, which, aside from a vague reference to "the reasons explained in this decision," appears to have taken place immediately following the ALJ's discussion of Plaintiff's daily activities. See Burrell, 775 F.3d at 1138-39 ("Although the ALJ made findings . . . concerning [c]laimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings); (see also AR 16 (stating, immediately after analyzing daily activities, that "[a]fter careful consideration of the evidence, the [ALJ] finds that [Plaintiff]'s medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.")). Therefore, the ALJ's decision does not provide the specificity required by case law.
//
//

Moreover, the Ninth Circuit has expressed doubt as to whether a treatment regimen including "powerful pain medications and injections" constitutes "conservative treatment." See Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010); (see also AR 16 (Plaintiff was repeatedly prescribed Vicodin), 386, 392, 402 (Plaintiff was recommended for and received nerve block injections for her conditions)).  Finally, in the absence of other appropriate reasons to find Plaintiff's testimony not fully credible, the fact that Plaintiff's pain was not substantiated by objective medical evidence does not provide an appropriate basis upon which to affirm. Light, 119 F.3d at 792-793 ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.").

**B.   The ALJ's Error Was Not Harmless**

"[H]armless error principles apply in the Social Security . . . context."  Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006)).  Generally, "an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Id. (citing Carmickle v. Comm'r Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)).

The Court cannot conclude that the ALJ's errors were harmless. The limiting effects of Plaintiff's impairments were directly relevant to assessing her RFC.  A claimant's RFC "may be the most critical finding contributing to the final . . . decision about

disability." See McCawley v. Astrue, 423 F. App'x 687, 689 (9th Cir. 2011) (quoting SSR 96—5p). Here, Plaintiff's RFC was central to the ALJ's determination that Plaintiff could perform her past relevant work as a retail store manager despite her limitations. (AR 17-18). "This work does not require the performance of work-related activities precluded by [Plainitff's] residual functional capacity." (AR 17). Because the Court cannot determine that the ALJ's errors are "inconsequential to the ultimate disability determination," the errors cannot be deemed harmless. See Carmickle, 466 F.3d at 885.

**A. Remand Is Warranted**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's credibility, remand is appropriate. Because outstanding issues must be resolved before a determination of disability can be made, and "when the

record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. <u>Burrell v. Colvin</u>, 775 F.3d 1133, 1141 (9th Cir. 2014)(citations omitted).

The Court has not reached any other issue not discussed <u>supra</u> except to determine that reversal with a directive for the immediate payment of benefits would be inappropriate at this time. In addition to the issues addressed in this order, the ALJ should consider on remand any other issues raised by Plaintiff, if necessary.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is REMANDED for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: April 20, 2016

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE